IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01429-RM-STV

**YOUTH SEEN**, a Colorado non-profit corporation, and
**TARA J. SMELT**, an individual

       Plaintiffs,

v.

**TYES, INC.**, a Colorado non-profit corporation, and
**ALISHA D. BLACKBURN**, an individual

       Defendants.

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), TYES, Inc. ("TYES") and Alisha D. Blackburn ("Ms. Blackburn," and, with TYES, "Defendants") hereby move to dismiss in their entirety Claims for Relief 1–4 and 7, and Ms. Blackburn moves to dismiss Claims for Relief 5 and 6 against her in her individual capacity as well. In support thereof, Defendants state:

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C. COLO.L.CivR 7.1:

Pursuant to D.C.COLO.L.CivR 7.1(b)(2), undersigned counsel did not confer with Plaintiffs' counsel before filing this Motion.

### I. INTRODUCTION

Plaintiffs Youth Seen, a Colorado non-profit corporation and Dr. Tara J. Smelt ("Dr. Smelt"), founder and executive director, bring the kitchen-sink of claims against Defendants based on the simple dissolution of an at-will, fiscal sponsorship arrangement that lasted less than one year. Under the arrangement, among other things, Youth Seen was responsible for overseeing TYES's funds. Creating a fiction that is neither borne out by the true

facts nor even properly alleged, Plaintiffs complain that Defendants terminated the arrangement and withheld "benefits" allegedly owed to Plaintiffs based on an unfounded racial animosity toward Dr. Smelt.  In truth, as Plaintiffs have pled, Defendants terminated the arrangement after TYES's funds disappeared, raising concerns of misappropriation.  Faced with the discovery of their financial improprieties and unable to defend them, Plaintiffs filed this offensive lawsuit instead - a tactic Dr. Smelt has used in Wyoming, Colorado and Utah, when faced to defend accusations of financial improprieties in the recent past.

Taking all well-pleaded facts as true for purposes of this Motion, Plaintiffs have not satisfied Rule 8 or Rule 12(b)(6) with respect to several claims.  Furthermore, because neither Ms. Blackburn nor Dr. Smelt are parties to the agreement at issue , Dr. Smelt does not have standing to bring, and Ms. Blackburn is not a proper party to, any contract claims asserted.

## II.     FACTUAL ALLEGATIONS

### A.     Youth Seen contracted to act as TYES's fiscal sponsor

On December 21, 2017, TYES and Youth Seen entered into an agreement that Dr. Smelt drafted, under which Youth Seen promised to act as TYES's fiscal sponsor (the "Agreement," attached here as Exhibit A[1]), which Agreement can be terminated "for any reason."  ECF No. 1, ¶¶ 20, 21; Ex. A, at p. 2.  Under the Agreement, Youth Seen was required to: (1) maintain separate bank accounts for TYES and Youth Seen; (2) hire a bookkeeper to maintain TYES's books and records; and (3) provide year-end financial statements of TYES profits and losses.

---

[1]     Because Plaintiffs reference, but do not attach to the Complaint, any of the operative documents relevant to this Motion, they are attached here as Exhibits A to C.

2

Ex. A, at p. 2. Youth Seen never created a separate account for TYES's funds (nor provide the requisite financials). ECF No. 1, ¶ 22.

TYES and Youth Seen also agreed to (i) work together to "find appropriate grants to assist in payment of TYES programming," (ii) coordinate programming, and (iii) give TYES two seats on Youth Seen's Board of Directors. *See* Ex. A. As pled, "[d]uring all times relevant to this matter, Ms. Blackburn was part of TYES's Executive team," and when asked, acted "as a member of Youth Seen's Board of Directors." ECF No 1, ¶¶ 10, 36. Importantly, as Plaintiffs admit, the Agreement was entered into following "introductions and a number of discussions" during which TYES became aware of Dr. Smelt's race, and, with that knowledge, entrusted Youth Seen with responsibility for and control over TYES's finances knowing that its executive director is "a Black/African-American non-binary individual." *Id.* at ¶¶ 3, 4, 19.

**B.    Deterioration of the short-lived, fiscal sponsorship arrangement**

Plaintiffs knew that TYES holds a family camp at the YMCA Camp Santa Maria ("Family Camp") every summer and that the funds were paid, at least in part, by the TYES families. *Id.* at ¶¶ 40, 41. However, after the 2018 Family Camp, Youth Seen admitted that the TYES's account that Youth Seen controlled as its fiscal sponsor, "did not have enough funds to cover the invoice for Family Camp." *Id.* at ¶ 47. Plaintiffs allege that, when Ms. Blackburn was informed of that fact, she accused Dr. Smelt of stealing them. *Id.* at ¶¶ 48, 49. In other words, as Plaintiffs have alleged, Ms. Blackburn, a member of TYES' leadership team, questioned where the TYES money had gone, and, without a rational answer, TYES terminated the Agreement months after it began. *See*, *e.g.*, *Id*. at ¶¶ 49, 54, 55.

3

Indeed, in the contemporaneous October 12, 2018 Notice of Termination (attached as Exhibit B), TYES made clear that it was terminating the Agreement because the YMCA funds had disappeared and because Youth Seen refused to provide any accounting of TYES's funds:

> Due to your ongoing failure to provide TYES with an accounting of its funds, including access to the separate account you were required to establish for those funds, and your failure to pay its now outstanding bill to the YMCA for the summer youth camp, please consider this TYES' Notice to Terminate your agreement as its fiscal sponsor.

*Id.* at p. 1. TYES further expressed "grave concern" that Youth Seen "never established the separate account and [has] commingled TYES funds with other accounts." *Id.* at p. 2. Said otherwise, TYES' only reason (contemporaneously relayed to Plaintiffs) for terminating the Agreement was Plaintiffs' misuse of TYES funds, not anything related to Dr. Smelt's race.

### C.   No alleged facts support racial discrimination by TYES or Ms. Blackburn

Plaintiffs' first two claims for relief are based on 42 U.S.C. § 1981, which protects an individual's right to make and enforce contracts free from racial discrimination. However, Plaintiffs offer no concrete allegations of racial discrimination, but only conclusory and summary statements, instead. For example, Plaintiffs allege that Ms. Blackburn accused Dr. Smelt of stealing the funds "because of Ms. Blackburn's known racial animus toward Black people," and that "TYES terminated the Agreement . . . because of Dr. Smelt's race." ECF No. 1 at ¶¶ 47-50, 106. Those are Plaintiffs' ***conclusions***, not facts, of racial animosity.

Plaintiffs further state that Defendants subjected African-American parents to greater scrutiny than Caucasian parents, and that Ms. Blackburn downplayed the effects of racial discrimination against a child seeking help. *Id.* at ¶¶ 38, 39. Those, too, are ***conclusions***, not facts, which have nothing to do with Dr. Plaintiff at all. Finally, Plaintiffs allege that Ms.

4

Blackburn (as part of TYES' leadership team) hired an attorney who "[o]n more than one occasion . . . made negative comments about Dr. Smelt's race and work with the LGTBQIA community," *Id.* at ¶¶ 57, 59, begging several questions: what comments? To whom? When? And how are they attributable to Defendants in any event.

### III.  ARGUMENT

#### A.  Legal Standards

To satisfy Rule 8, a complaint must set forth a short and plain statement of the facts upon which a claim is based sufficient to give each defendant fair notice of the claims and the grounds upon which they rest. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Similarly, to survive this Motion under Rule 12(b)(6), Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" and which offers more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Said otherwise, Plaintiffs must plead ***facts***, not conclusions: "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Here, Plaintiffs offer labels and bare-bone conclusions, and make "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570. Those conclusory assertions should not be taken as true, and Plaintiffs should be held to the heightened pleading standards required in this forum.

### B.     Plaintiffs Have Not Stated A Valid Claim for Relief under 42 U.S.C. § 1981.

Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Reynolds v. School District No. 1, Denver, Colorado*, 69 F.3d 1523, 1532 (10th Cir.1995) (quoting 42 U.S.C. § 1981). Plaintiffs allege that TYES discriminated against them based on race, impairing the benefits of the Agreement as protected under 42 U.S.C. § 1981, and that Ms. Blackburn aided and abetted that purported conduct. To state those claims, Plaintiffs must allege with reasonable particularity: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Barfield v. Com. Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007) (citing *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001)). Plaintiffs miss the mark.

        1.     <u>Plaintiffs failed to plead with reasonable particularity that Defendants acted with an intent to discriminate on the basis of race</u>

The United States Supreme Court has been very clear: "§ 1981 . . . can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S. Ct. 3141, 3150, 73 L. Ed. 2d 835 (1982). Plaintiffs have failed to plead with reasonable particularity *any* allegations that Defendants took any purposeful action to harm Plaintiffs with "the intent to discriminate on the basis of race." *Id.* First, Plaintiffs' allegations of racial discrimination are conclusions, not facts:

- "Ms. Blackburn targeted Dr. Smelt, the only Black/African American individual in the room." ECF No. 1 at ¶ 49. (Ms. Blackburn was not even "in the room" when Youth Seen advised there were no funds).

- "Ms. Blackburn attacked Dr. Smelt and blindly accused Dr. Smelt of criminal conduct because of Ms. Blackburn's known racial animus toward Black people." *Id.* at ¶ 50.

- "Ms. Blackburn repeatedly showed discriminatory bias against Black families seeking to join TYES and would make negative comments about Black youth and families." *Id.* at ¶ 51.

- "TYES additionally breached the Agreement . . . by terminating the Agreement because of Dr. Smelt's race." *Id.* at ¶ 106.

- "Dr. Smelt's race led TYES and Ms. Blackburn to accuse Dr. Smelt of criminal conduct and to sever the Partners' relationship prematurely." *Id.* at ¶ 108.

Plaintiffs likewise allege that Defendants "targeted" minority families seeking to join TYES, and "dismissed" another parent's concerns about a "child's need for support related to race." *Id.* at ¶¶ 38, 39. Those are not allegations of racial animus against Dr. Smelt and cannot show any discriminatory intent in Defendants' business interactions **with Plaintiffs**.

Third, on its face, the Complaint itself (and the incorporated documents) make clear that Defendants terminated the Agreement, not because of any racial discrimination, but because Defendants had well-founded concerns that Plaintiffs had misappropriated TYES's funds. As Plaintiffs themselves assert, Ms. Blackburn expressed TYES's concern immediately upon learning that the account Youth Seen was required to maintain on TYES' behalf was missing TYES' funds. *Id.* at ¶¶ 47-49. TYES then laid out its concerns and terminated the Agreement. Plain and simple. The Complaint is devoid of any allegation that TYES's stated concerns contain "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to suggest they were a mere pretext. *See Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 636 (10th Cir. 2008) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)).

Fourth, Plaintiffs spend twenty-eight paragraphs describing an alleged "smear campaign against Dr. Smelt" ***after*** the termination in October 2018, ECF No. 1 at ¶¶ 57–85. On their face,

7

those allegations are temporally disconnected and do not support any finding of racial animus. And finally, Plaintiffs admit that TYES entered into the Agreement: fully aware of Dr. Smelt's race, *Id.* at ¶ 4, giving Youth Seen fiscal sponsorship/control over TYES funds, agreeing to give Youth Seen a role in coordinating TYES programming, and agreeing to appoint two TYES members to Youth Seen's Board of Directors, including Ms. Blackburn herself! Ex. A, pp. 1–2; ECF No. 1 at ¶¶ 21, 27–29, 33. Any notion that Defendants harbored "known racial animus toward Black people" is an accusation belied by the Complaint itself.

In sum, Plaintiffs have not sufficiently alleged, as they must under *Twombly* and *Ashcroft*, that TYES, or Ms. Blackburn acting as one of its leaders, terminated the Agreement or otherwise deprived Plaintiffs of its benefits, with the intent to discriminate on the basis of race.

        2.    <u>Plaintiffs have not plead with the requisite particularity that Defendants' alleged discrimination was a "but-for cause" of the termination</u>.

Separately, and importantly, under recent Supreme Court precedent, to prove a violation of Section 1981, a plaintiff must plead and prove that the alleged racial discrimination is a "but-for cause" of the loss of the contractual right or benefit and not merely that discrimination played "some role" in a defendant's decision-making. *See Comcast v. Nat'l Assoc. of African-American Owned Media*, 140 S.Ct. 1009, 1019 (2020) (". . .a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). Rather than plausibly plead that, "but-for" racial animus, TYES would not have terminated the Agreement, Plaintiffs admit that TYES terminated the Agreement after being told its money was gone. Even assuming race played any role (it did not), Plaintiffs have not pled that it was a "but-for cause" of the termination (it was not). Plaintiffs therefore cannot state a claim under 42 U.S.C. § 1981.

       3.      <u>Separately, Plaintiffs have failed to plead with reasonable particularity that Dr. Smelt was entitled to a "salary" as a contractual benefit.</u>

Plaintiffs must also plead the *actual* loss of a contractual interest and not merely the possible loss of a future opportunity. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001). Although Plaintiffs complain that "Ms. Blackburn and TYES refused to pay Dr. Smelt their agreed-upon salary," ECF No. 1 at ¶ 56, Plaintiffs have alleged only that, "[o]n March 22, 2018, Ms. Blackburn, *in her official capacity as a member of Youth Seen's Board of Directors*, signed a letter notifying Dr. Smelt that *the [Youth Seen] Board* had agreed to an annual salary of $70,000 for Dr. Smelt's work for both Youth Seen and TYES." *Id.* at ¶ 36 (emphasis added). In other words, *Youth Seen—not TYES*—agreed to pay Dr. Smelt's salary.

Separately, a contingent benefit that is uncertain is not cognizable under Section 1981. *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001). Here, as the March 22, 2018 letter (attached here as Exhibit C) makes clear, any offer of salary was contingent, and based on "the understanding that one of [Dr. Smelt's] responsibilities is to fund raise for *this cost* [the salary] as well as all operating costs of the organization." Plaintiffs have not alleged (because they can't) that Dr. Smelt raised funds to cover this "salary" from Youth Seen, making it an uncertain, future opportunity that is not cognizable under Section 1981.

       4.      <u>Plaintiffs have not stated a claim against Ms. Blackburn for aiding and abetting a violation of 42 U.S.C. § 1981</u>

Under Colorado law, a claim for aiding and abetting must plead and prove that "the defendant knowingly and substantially assists the principal violation." *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994). Plaintiffs therefore must adequately plead Ms. Blackburn's knowing and substantial participation in a violation of 42 U.S.C. § 1981. *Id. See also Alvarez*

9

*LLC v. Blazar Tech. Sols., LLC*, No. 17-CV-01339-RBJ, 2019 WL 3205952, at *2 (D. Colo. July 16, 2019).  For the same reasons stated above, because Plaintiffs have not sufficiently pled that, "but-for" Defendants' racial discrimination, the Agreement would not have been terminated, the aiding and abetting claim fails, too.

### C.   Plaintiffs' Remaining State Claims Are Similarly Defective

1.   <u>The tort claims are barred by the statute of limitations</u>.

In Colorado, most "[t]ort actions" "must be commenced within two years after the cause of action accrues, and not thereafter."  Colo. Rev. Stat. Ann. § 13-80-102 (West).  Because Plaintiffs filed the Complaint on May 26, 2021, any tort actions that accrued before May 26, 2019 are time-barred.  Several actions underlying Plaintiffs' claims took place before that date:

- Plaintiffs learned of the YMCA invoice for Family Camp no later than in September 2018. ECF No. 1 at ¶¶ 45, 139

- Shortly thereafter, Youth Seen informed TYES that it did not have funds to pay the YMCA invoice and Ms. Blackburn "immediately accused Dr. Smelt of criminal conduct . . . ." *Id.* at ¶¶ 47 – 48.

- TYES terminated the Agreement with Youth Seen on October 12, 2018.  Ex. B.

- An attorney acting on behalf of TYES reported Youth Seen's and Dr. Smelt's potential criminal conduct to the Boulder District Attorney's Office "in the Fall of 2018 . . . ."  ECF No. 1 at ¶ 60.

- Shortly thereafter, the Boulder District Attorney's Office referred the case to the Jefferson County District Attorney's Office, and the investigators required Dr. Smelt to provide copies of personal financial account statements and Youth Seen financial account statements and ledgers.  *Id.* at ¶¶ 61, 64.

Other actions in the Complaint also likely occurred, if at all, before that date:

- An "anonymous" complaint was filed against Dr. Smelt and Youth Seen with the Colorado Secretary of State Charities Program. *Id.* at ¶ 70.

- Defendants allegedly made disparaging comments about Plaintiffs to community organizations and grantors.  *Id.* at ¶ 90.

- Plaintiffs allegedly lost grant opportunities from Chinook Fund and Colorado Trust. *Id.* at ¶¶ 91, 153.

Because Plaintiffs' remaining state claims for intentional infliction of emotional distress, invasion of privacy, and intentional interference with a business relationship are all based on these very same facts, they are barred by the two-year statute of limitations and cannot proceed.

2. <u>Plaintiffs' claim for Intentional Infliction of Emotional Distress by Extreme and Outrageous Conduct fails as a matter of law.</u>

To survive this Motion on their claim of intentional infliction of emotional distress by extreme and outrageous conduct, Plaintiffs must plead: (1) that defendant engaged in extreme and outrageous conduct; (2) recklessly or with intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). Extreme and outrageous conduct is an "extremely high" standard that requires the alleged conduct "to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting Restatement (Second) of Torts § 46 (1965)), and is generally characterized by "physical assault, or extreme harassment, ridicule, and humiliation . . . ." *LaBrecque v. L3 Commc'n Titan Corp.*, No. CIV05CV00642-REB-MJW, 2007 WL 1455850, at *5 (D. Colo. May 16, 2007), supplemented, No. CIV.05-CV-00642-REB-, 2007 WL 1520110 (D. Colo. May 21, 2007), and aff'd sub nom. *Sydnes v. United States*, 523 F.3d 1179 (10th Cir. 2008). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003). Plaintiffs miss that mark too.

11

Specifically, Plaintiffs have pled only that Defendants "continuously accus[ed] Dr. Smelt of criminal conduct" after TYES's funds disappeared. ECF No. 1 at ¶ 121. Standing alone, though, alleged false accusations are not outrageous conduct. *See Steinberg v. Thomas*, 659 F.Supp. 789, 795 (D. Colo. 1987) ("[t]ermination combined with defamatory comments . . . do not constitute outrageous conduct."); *Valencia v. GEO Grp., Inc.*, No. 05 CV 00296 LTB PAC, 2005 WL 3416118, at *7 (D. Colo. Dec. 13, 2005) ("numerous false statements and accusations . . . do not constitute outrageous behavior.").

Even assuming the allegations were false ***and*** motivated by racial animus (neither are true), the conduct is not outrageous as a matter of Colorado law, and would constitute nothing more than an "insult[]" or "indignit[y]." *See Pearson*, 70 P.3d at 597. *See also, Sydney v. Conmed Elec. Surgery*, No. 06-CV-00788-REB-MEH, 2007 WL 2786431, at *7 (D. Colo. Sept. 24, 2007), aff'd, 275 F. App'x 748 (10th Cir. 2008) (citing *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002), aff'd, 90 P.3d 228 (Colo. 2004)) ("racial remarks on a few occasions . . . are insufficient to support this claim"); *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 384–385 (10th Cir. 1998) ("[g]etting fired from a job, even for discriminatory reasons, is not outrageous conduct").

In short, Plaintiffs have not pled any facts that constitute "outrageous conduct" under Colorado law. Accordingly, the claim must be dismissed under Rule 12(b)(6).

### 3. Plaintiffs do not state a claim for Invasion of Privacy

To prevail on a claim for invasion of privacy based on intrusion upon seclusion, Plaintiffs must plead that: "(1) another person intentionally intruded, physically or otherwise, (2) upon the plaintiff's seclusion or solitude, and (3) the intrusion was, objectively, highly offensive or

objectionable." *See Quigley v. Rosenthal*, 327 F.3d 1044, 1073 (10th Cir. 2003); § 33:7. Invasion of privacy—Intrusion into seclusion, 7A Colo. Prac., Personal Injury Torts and Insurance § 33:7 (3d ed.). Plaintiffs have not pled any facts showing that Defendants invaded Plaintiffs' right to privacy, much less in the "highly offensive way" required by Colorado law.

Plaintiffs' theory appears to be that TYES' report of Plaintiffs' theft to Colorado enforcement agencies, causing third-party investigators to review Dr. Smelt's financial and tax records, invaded Plaintiffs' privacy. *See* ECF No. 1 at ¶¶ 128 – 133. The law cannot be that an investigator's official conduct subjects Defendants to liability. *See Sundheim v. Bd. of Cty. Comm'rs of Douglas Cty.*, 904 P.2d 1337, 1351 (Colo. App. 1995), aff'd, 926 P.2d 545 (Colo. 1996) (defendants' committed no intrusion into plaintiff's privacy when those defendants "did not participate in any of the investigator's challenged activities."). The law, in fact, is not.

Moreover, even if the reporting of a crime could provide the grounds for an invasion of privacy claim (and it should not), for an intrusion into private financial matters to be actionable, "the perpetrator's action must 'foreseeably result in extreme mental anguish, embarrassment, humiliation, or mental suffering and injury to a person possessed of ordinary sensibilities.'" *Robyn v. Phillips Petroleum Co.*, 774 F. Supp. 587, 592 (D. Colo. 1991). Yet again, Plaintiffs plead only conclusory statements (no facts) that the third-party investigators' review of Dr. Smelt's financial information during a legitimate criminal investigation caused such harm. It simply cannot be that reporting a crime to law enforcement, which report leads to an investigation of the criminal conduct, constitutes an invasion of privacy.

In sum, Plaintiffs have not pled (adequately or otherwise) that **Defendants** intruded on Plaintiffs' purported privacy, let alone, in a way that is actionable in Colorado.

        4.      <u>Plaintiffs have not stated legitimate contract claims against Ms. Blackburn</u>

Plaintiffs allege that TYES and Ms. Blackburn breached contractual obligations, including an implied duty of good faith and fair dealing in carrying out the terms of the Agreement. ECF No. 1 at ¶¶ 134–147. However, neither Dr. Smelt nor Ms. Blackburn were parties to the Agreement. *See* Ex. A; ECF No. 1 at 135. Nor do Plaintiffs allege that Ms. Blackburn committed any breach in her personal capacity, only that her actions as a TYES representative did so. *See generally Id.* at ¶¶ 134–141. Accordingly, Dr. Smelt has no standing to assert claims arising out of the Agreement, and Ms. Blackburn must be dismissed as she is not a party to that contract.

        5.      <u>Plaintiffs do not state an Intentional Interference with Prospective Economic or Business Advantage claim</u>

To plead a claim for interference with a prospective business relationship, Plaintiffs must demonstrate that: "(1) it had either a valid existing contract with a third party or that it expected to enter into a contract with a third party; (2) the Defendants induced or otherwise caused the third party to breach the contract or not enter into the contractual relation; and (3) the Defendants did so intentionally and via improper means." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1119 (D. Colo. 2010), aff'd, 566 F. App'x 681 (10th Cir. 2014). *See also Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. 2009) ("[A] plaintiff must show . . . that such interference [with prospective contractual relations] was 'improper.'"); *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo. App. 1981).

Plaintiffs allege that Defendants made false statements to two grantors, Colorado Trust and Chinook Fund, which caused them "to refrain from entering into or continuing aspects of their grantor-grantee relationships with Youth Seen and Dr. Smelt . . . ." ECF No. 1 at ¶ 153; *see*

*also id.* at ¶ 91.  That is not enough.  Plaintiffs must allege facts to show some "protected prospective contractual relation," for example, "discussions that might lead to a formal, binding contract," or a "prospective quasi-contractual agreement[]," or "offers" of funds from the prospective grantors.  *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1119–20 (D. Colo. 2010), aff'd, 566 F. App'x 681 (10th Cir. 2014).  The Complaint is devoid of that information.

Plaintiffs also fail to plead with the requisite specificity *any* facts to support the complaint that Defendants interfered with some alleged business relationship with the two grantors.  Bald, bare-bone statements that Defendants provided false information or made false statements to Chinook and Colorado Trust, is simply not enough.  Therefore, because Plaintiffs have not pleaded any protected business relationship or explained how Defendants interfered with it in the first place, Plaintiffs' Seventh Claim for Relief must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Claims 1-4 and 7 as to both Defendants, and Claims 5 and 6 as to Alisha Blackburn, should be dismissed.

Dated:  September 20, 2021.

Respectfully submitted,

*s/ Tamera D. Westerberg*
Tamera D. Westerberg (#29859)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303.244.1800
Facsimile:   303.244.1879
Email:  westerberg@wtotrial.com

Attorney for Defendants

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on September 20, 2021, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Leah P. VanLandschoot**
  lvanlandschoot@thelitbot.com, christa@thelitbot.com

- **Amy M. Maestas**
  amaestas@thelitbot.com

*s/ Tamera D. Westerberg*